UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TORRES, JR., Petitioner, v. FIDENCIO GUZMAN, Respondent. | Case No. 2:25-cv-07117-SB-MBK<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the petition for writ of habeas corpus, all associated records, the Report and Recommendation (R&R) of the U.S. Magistrate Judge, and the objections to the R&R. The Court accepts the findings and recommendations set forth in the R&R and denies the petition with prejudice.

Petitioner Jose Torres, Jr. filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2001 state court conviction for first degree murder. Petitioner was sentenced to 50 years to life. His conviction became final in December 2002. Years later, Petitioner's wife discovered a 2012 *Los Angeles Times* article concerning Detective John Zambos, who participated in the investigation of Petitioner's case. Petitioner thereafter pursued additional state habeas relief and filed this federal petition on July 31, 2025. Dkt. No. 1.

The magistrate judge issued an R&R recommending that the petition be dismissed as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Dkt. No. 17. The R&R concluded that Petitioner's conviction became final on December 31, 2002, and that neither his state post-conviction proceedings nor his

later discovery of the 2012 article rendered his 2025 federal petition timely.[1] Petitioner filed objections. Dkt. No. 18.

Petitioner does not dispute that his federal petition was filed outside AEDPA's one-year limitations period. Indeed, he states in his petition that, after learning in October 2008 that the California Supreme Court had denied his earlier state habeas petition, he "was time barred and could not go to the Federal Courts." Dkt. No. 1 at 11. Instead, in his objections, Petitioner invokes actual innocence, arguing that newly discovered evidence permits the Court to disregard the procedural bar. Liberally construed, this argument invokes the actual-innocence gateway recognized in *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), which permits an otherwise untimely habeas petition to proceed if the petitioner makes a sufficient showing of actual innocence.

Petitioner has not made the requisite showing. The showing required to pass through the actual-innocence gateway is "demanding" and applies only in the "extraordinary" case. *House v. Bell*, 547 U.S. 518, 538 (2006). Actual innocence means factual innocence, not merely legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). After considering all the evidence, the court must then determine whether "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327–28. Under this standard, it is not enough that the new evidence might create reasonable doubt; it must be powerful enough that no reasonable

[1] The R&R states that Petitioner filed his first state habeas petition in January 2004, but the state trial court denied it in June 2003. This error does not affect the result. Even assuming tolling through October 2008 (when Petitioner states he first learned that the California Supreme Court had denied his petition), the limitations period expired years before he filed this action in July 2025.

juror would convict. *Sistrunk v. Armenakis*, 292 F.3d 669, 673 (9th Cir. 2002) (en banc). Although impeachment evidence alone may satisfy this standard, evidence providing only "some degree of impeachment" is insufficient where it does not "fundamentally call into question the reliability" of the conviction. *Id*. at 677; *see also id.* at 676 (acknowledging that the proffered evidence "has some impeachment value" but concluding that it "is far from conclusive").

In support of his claim of actual innocence, Petitioner relies principally on an August 2012 *Los Angeles Times* article entitled "LAPD Reluctant to Change Its Handling of Photo Lineups." Dkt. No. 1 at 25–27. The article discusses concerns about LAPD eyewitness-identification procedures and uses two unrelated investigations involving Zambos as examples. In the first, an eyewitness initially focused on several photographs before Zambos directed her attention to one photograph of an individual who she ultimately identified as the killer. Although the article describes a suggestive identification procedure, it does not report that the witness misidentified the perpetrator or that Zambos was ultimately found to have improperly influenced the identification. In the second, a witness initially identified someone other than the suspect, but the article reports that Zambos directed another detective to delete the recording of that interview and failed to disclose the initial identification. A judge reportedly characterized the detectives' conduct as "outrageous" and "totally unacceptable." *Id.*

The article's impeachment value is several steps removed from the showing *Schlup* requires. The article is not evidence that Petitioner was innocent or that the identification of him by the eyewitness Sanchez was false. At most, it reports conduct by Zambos in other investigations that could have provided a basis to question him about his credibility or identification practices. But Petitioner has not substantiated the article's account. He has presented no evidence that Zambos admitted the reported conduct or accepted the article's characterization of it, nor has he produced the underlying records or other evidence establishing that conduct. Thus, the article

identifies a potential avenue of impeachment that, if pursued and substantiated, could have undermined Zambos's credibility and lent additional support to Sanchez's trial testimony that Zambos pressured him to identify Petitioner. That attenuated chain of potential impeachment is not "sufficiently substantial to make it more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002). Moreover, Sanchez was not the only eyewitness who identified Petitioner. Juan Carlos Perez separately identified Petitioner before trial and again at trial. *People v. Torres*, No. B149231, 2002 WL 1732505, at *1, *3 (Cal. Ct. App. July 25, 2002). Petitioner presents no new evidence specifically undermining Perez's identification.

Petitioner's remaining arguments do not alter this conclusion. He challenges the state court's handling of his *Pitchess* motion, points to comments made by the judge during those proceedings, asserts that the prosecutor conducted another photographic lineup shortly before trial without defense counsel, and contends that later state proceedings were affected by bias. *See* Dkt. No. 18 at 2. These arguments principally allege procedural or constitutional error, not new evidence that Petitioner did not commit the murder. Indeed, the *Pitchess* materials show that the conflict between Sanchez's denial that he identified Petitioner and Zambos's contrary account was known before trial and was the basis for defense counsel's request for discovery.[2] None of these additional matters, considered individually or together with the article, supplies the "new reliable evidence" necessary to show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

---

[2] Petitioner also relies on what he characterizes as a *Brady* notification. Dkt. No. 18 at 3. But that notification is addressed to another defendant in an unrelated case and concerns a sustained dishonesty finding against another deputy sheriff, not Zambos. Petitioner identifies no connection between that notification and his prosecution.

Having conducted a de novo review of the portions of the R&R to which Petitioner objects, the Court overrules the objections and accepts the findings and recommendations of the magistrate judge, as modified by this Order. The petition is denied and dismissed with prejudice as untimely.

A final judgment will issue separately.

DATED: September 23, 2026

Stanley Blumenfeld Jr.
United States District Judge